IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 4, 2008

**STATE OF TENNESSEE v. ADRIENNE HOLLOWELL**
**Appeal from the Criminal Court for Shelby County**
**No. 05-05746    Joseph B. Dailey, Judge**

_____

**No. W2006-01803-CCA-R3-CD  - Filed August 19, 2008**

_____

The defendant, Adrienne Hollowell, pled guilty to one count of theft of property valued over $500, a Class E felony.  The Shelby County Criminal Court sentenced the defendant to one year in the Department of Correction as a Range I, standard offender.  At the time of her guilty plea, the defendant filed a petition to suspend her sentence; following an August 2006 hearing, the trial court denied the petition and ordered the defendant to serve her sentence in incarceration.  The defendant appeals, asserting that the trial court erred by ordering a sentence of full incarceration.  After reviewing the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and NORMA MCGEE OGLE, JJ., joined.

Javier M. Bailey, Memphis, Tennessee, for the appellant, Adrienne Hollowell.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; William L. Gibbons, District Attorney General; Betsy A. Carnesale and Amy P. Weirich, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

On August 18, 2005, the defendant was indicted on one count of theft of property valued over $1000, a Class D felony.  On July 21, 2006, the defendant pled guilty to theft of property valued over $500, a Class E felony.  At the guilty plea hearing, the state recounted the following facts supporting the defendant's theft conviction:

[T]he State's proof would have shown that the defendant along with three other female subjects entered a store owned by the victim Autumn Chastain . . . at 3092 Poplar.

[The defendant] distracted the employees of the store while her codefendants tried on various items of clothing, stuffing items into bags they were carrying. The complainant stated she yelled for security and chased the suspects as they attempted to leave the store. They all got into a black four-door Acura and drove off. . . . [T]he complainant did get the tag number on the car and gave it to the officers, [who] learned it was registered to Dwight and Adrienne Hollowell. They did run photographs of Adrienne Hollowell and [an]other suspect. . . . The complainant immediately identified both females as definite suspects. This occurred in Shelby County.

In exchange for her plea, the defendant received a sentence of one year as a Range I, standard offender. The manner of service was left to the discretion of the trial court, although the parties agreed that the defendant was not eligible for judicial diversion.

At the sentencing hearing, the defendant said that although she was not trying to distract the store owner at the time of the theft, she did take full responsibility for what occurred that day. She said that the day of the incident, she was riding around and "browsing" shops with family members when they went into the victim's store. The defendant insisted that she "was not aware that a theft was about to take place." After she and the other three persons exited the store, they went to the defendant's car, which the defendant said she was not driving because her license had been suspended. According to the defendant, after the four women entered the car, the store owner came out and said something to them. The defendant claims that this was the first time she became aware that "something was going on;" particularly, the defendant said that she "found out that they had lifted items from there." The defendant admitted that the three women with whom she visited the store took scarves from the store. She said that she did not know what the three women did with the stolen merchandise.

According to the defendant, the police did not ask her to assist in the investigation or identify anyone who was in the store with her that day. The defendant admitted that she was the only person charged in the offense; she surmised that she was charged because the four women left the store in her car. The defendant said that she had placed $1200 into escrow for restitution. She said that she had never been placed on probation before, had been employed with the same company for two years, was married, and had two children.

On cross-examination, the state asked the defendant to identify the other three women involved in the incident at the store. The defendant was hesitant to answer the prosecutor's questions; she initially said that the three women were family members. She said that one of the women's names was Cassandra. When asked for her last name, the defendant responded, "I don't understand why I have to give names," before saying that she did not know Cassandra's last name or where she lived. She also noted that Cassandra was "not actually a family member. She's like a distant family member, and I'm not even in contact with [her] anymore." She noted that the other

two women were sisters, Diane and Mia Becton. The defendant said she did not know where the Becton sisters lived. She also reiterated that she was unsure what the three women did with the purloined merchandise, which the state identified as "over $1000 worth of bath lotions and shoes and scarves."

The defendant also admitted that between the November 2004 incident and her January 2005 arrest, she did not contact police regarding this incident. She denied taking anything from other stores and insisted that this incident marked the first time she had shopped with Cassandra and the Becton sisters. She admitted that she had received a misdemeanor citation for driving without a license. She said she drove without a license because she "wasn't in a position, financially, to get my driver's license back, and I have to go to work, and my children have to go to school."

Chris Davis, a minister and the defendant's neighbor, testified that he knew the defendant and her husband. Davis said that when he first learned about this incident, he "just kind of blew it off because it just wasn't consistent with the people that I knew as my next door neighbors." Davis said that he did not believe that the defendant would be involved in any other situation similar to this one. On cross-examination, Davis said that the defendant's citation for driving on a revoked license showed her to be irresponsible, but he added, "I'm not sure that she's the best person to let my children car pool with, but it doesn't make that to say that she's a shoplifter."

At the conclusion of the hearing, the trial court denied the defendant's request for probation and ordered a term of full incarceration. This appeal followed.

## ANALYSIS

The defendant argues that the trial court erred in denying her probation and ordering her to serve a sentence of full incarceration. We disagree.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d) (2003). As the Sentencing Commission Comments to this section note, on appeal the burden is on the defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration and proper weight to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991).

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, and (7) the potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-102, -103, -210 (2003); see State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991); State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

A defendant who does not possess a criminal history showing a clear disregard for society's laws and morals, who has not failed past rehabilitation efforts, and who "is an especially mitigated or standard offender convicted of a Class C, D, or E felony is presumed to be a favorable candidate for alternative sentencing options in the absence of evidence to the contrary." Tenn. Code Ann. § 40-35-102(6); see also State v. Fields, 40 S.W.3d 435, 440 (Tenn. 2001). The following considerations provide guidance regarding what constitutes "evidence to the contrary" that would rebut the presumption of alternative sentencing:

> (A) Confinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct;
> (B) Confinement is necessary to avoid depreciating the seriousness of the offense or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses; or
> (C) Measures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant.

Tenn. Code Ann. § 40-35-103(1); see also State v. Hooper, 29 S.W.3d 1, 5 (Tenn. 2000). Additionally, the principles of sentencing reflect that the sentence should be no greater than that deserved for the offense committed and should be the least severe measure necessary to achieve the purposes for which the sentence is imposed. See Tenn. Code Ann. § 40-35-103(2), (4). The court should also consider the defendant's potential for rehabilitation or treatment in determining the appropriate sentence. See id. § (5). "Candor [with the court] is a relevant factor in assessing a defendant's potential for rehabilitation, and the lack of candor militates against the grant of probation." State v. Souder, 105 S.W.3d 602, 608 (Tenn. Crim. App. 2002) (citations omitted); see State v. Kendrick, 10 S.W.3d 650, 656 (Tenn. Crim. App. 1999). Similarly, a defendant's truthfulness and willingness to accept responsibility are probative of the prospects for rehabilitation. State v. Dowdy, 894 S.W.2d 301, 306 (Tenn. Crim. App. 1994); State v. Anderson, 857 S.W.2d 571, 574 (Tenn. Crim. App. 1992).

Because the defendant was convicted of a Class E felony, she is entitled to the presumption that she is a favorable candidate for alternative sentencing. See Tenn. Code Ann. § 40-35-102(6). We note, however, that "the determination of whether the appellant is entitled to an alternative sentence and whether the appellant is entitled to full probation are different inquiries." State v. Boggs, 932 S.W.2d 467, 477 (Tenn. Crim. App. 1996). Where a defendant is entitled to the statutory presumption of alternative sentencing, the state has the burden of overcoming the presumption with evidence to the contrary. State v. Bingham, 910 S.W.2d 448, 455 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9. Conversely, the defendant has the burden of establishing his or her suitability for full probation, even if the defendant is entitled to the statutory presumption of alternative sentencing. Id.; see Boggs, 932 S.W.2d at 477. No criminal defendant is automatically entitled to probation as a matter of law. State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997). Rather, the defendant must demonstrate that probation would serve the ends of justice and the best interests of both the public and the defendant. See Souder, 105 S.W.3d at 607.

In determining whether to grant probation, the court must consider the nature and

circumstances of the offense; the defendant's criminal record; his or her background and social history; his or her present condition, both physical and mental; the deterrent effect on the defendant; and the defendant's potential for rehabilitation or treatment. See Tenn. Code Ann. § 40-35-103. If the court determines that a period of probation is appropriate, it shall sentence the defendant to a specific sentence but then suspend that sentence and place the defendant on supervised or unsupervised probation either immediately or after the service of a period of confinement. See Tenn. Code Ann. §§ 40-35-303(c), -306(a) (2003).

In this case, the trial court found that the defendant was not being truthful and candid with the court. The court noted that while the defendant pled guilty and professed to accept responsibility for her actions, the defendant "really hasn't accepted responsibility for . . . any criminal conduct at all," stating that "[e]ach step of the way, she tried to insulate herself from any criminal conduct." The trial court noted that it did not believe the defendant when she said that she was present at the store but was unaware that her three companions were taking merchandise from the store, even after the store owner ran after the four women and the car's driver nearly ran over the owner in a parking lot. The court also expressed concern over the defendant's refusal to notify the police concerning the incident and her reluctance to identify the three other participants in court. In short, the trial court concluded that the defendant's lack of candor and her "refusal to be honest about what occurred that day and what's occurred subsequent to that day . . . suggests to me that she is a high risk to repeat this conduct." Such conclusions were also indicative of the trial court's desire to avoid depreciating the seriousness of the crime. In light of the trial court's findings, we conclude that the record supports the trial court's denial of probation and imposition of full incarceration. The defendant is accordingly denied relief on this issue.

## CONCLUSION

In consideration of the foregoing and the record as a whole, the judgment of the trial court is affirmed.

_____
D. KELLY THOMAS, JR., JUDGE